IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TOMEKO MALONE,

      Plaintiff,                               CV F 06 0200 AWI  WMW   P

  vs.                                         FINDING AND RECOMMENDATION RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC 34)

SERGEANT BARKER, et al.,

      Defendants.

      Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on February 22, 2006. Plaintiff names Sergeant Barker as the defendant. Plaintiff alleges that Sergeant Barker was deliberately indifferent to Plaintiff's health and safety, resulting in injury to Plaintiff. Pending before the court is Defendant's motion for summary judgment. Plaintiff has opposed the motion.

      Plaintiff is an inmate currently incarcerated at Mule Creek State Prison in Ione. Plaintiff names as defendant Sergeant Barker.  The event that gives rise to this lawsuit occurred while Plaintiff was housed at CCI Tehachapi.  On July 25, 2005, at CCI Tehachapi, Barker "was asked and informed of plaintiff medical condition, left shoulder injury and lower back pain." Plaintiff informed Barker and the unknown C/O that he had a medical chrono that prevented him from

lifting, and that he needed a puschart to move his personal property.  Barker told Plaintiff that if he did not move it without a pushcart, the property would be thrown away.  Plaintiff alleges that "he was made to drag the property across the prison yard, upstairs to cell."  On the next day, "Barker and another CO wouldn't get me a puschart, made me drag my property back across yard again."  Plaintiff alleges that he suffers extreme pain, aches, stiffness, cramping in his left shoulder and muscle spasms in his lower back.  Plaintiff alleges that he has "serious problems" lifting small items or standing for too long.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out

of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (*citation omitted*).

## DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

1. At all times relevant to this action, Plaintiff was a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR) at California Correctional Institution Tehachapi (CCI). (Compl. 3-4; Pl.'s Dep. 7:21-25, attached as Ex. A.)

2. At all times relevant to this action, Defendant Barker was employed by CDCR as a Correctional Sergeant at CCI. (Barker Decl. ¶ 2, attached as Ex. B.)

3. In February 2005, Plaintiff received a CDC 128-C medical chrono stating that he was restricted to light duty with no lifting over twenty pounds and no repeated bending while housed at CCI. (Pl.'s Dep. 14:6-15:1.)

4. On July 25, 2005, Plaintiff was preparing to move from CCI to a new institution. (Pl.'s Dep. 28:24-29:3.)

5. When inmates at CCI move to another institution, the following procedure is followed: (1) records staff contacts the Institution Transportation Team and provides them with the names and CDCR numbers of inmates to be institutionally transferred; (2) the Institution Transportation Team arrives at the housing units for those inmates to be institutionally transferred and supervises the inmates in moving their property from their cells to a bus; (3) the inmates ride a bus to CCI's reception center; (4) once at the reception center, the inmates move their property from their reception center cell, which is coordinated by CCI's correctional staff,

4

reception center staff, or receiving and release staff; and (6) the inmates then ride a bus to their new institution. (Barker Decl. ¶ 4.)

6. Plaintiff's property was contained in five large trash bags, weighing approximately forty pounds each. (Pl.'s Dep. 16:10-47:11-24.)

7. After moving his property from his cell to the bus, with the use of a pushcart, Plaintiff arrived at CCI's reception center. (Pl.'s Dep. 9:2-10:15.)

8. At the reception center, Plaintiff informed Barker about his medical chrono and requested a pushcart to move his property to his reception center cell.[1]

9. Because no puschart was available, Barker refused Plaintiff's request. (Pl.'s Dep. 15:20-23, 22:25-26:12.)

10. After Barker refused Plaintiff's request for a pushcart, another inmate offered to help move Plaintiff's property. (Pl.'s Dep. 21:13-15.)

11. Plaintiff and the other inmate divided Plaintiff's property in half and dragged it to Plaintiff's reception center cell. (Pl.'s Dep. 21:13-19.)

12. While he could have prevented the other inmate from assisting Plaintiff, Barker chose not to, believing that the assistance of the other inmate would allow Plaintiff to move his property without injuring himself. (Barker Decl. ¶¶ 14-15.)

13. On July 26, 2005, Plaintiff again informed Barker about his medical chrono and requested a pushcart to move his property. (Pl.'s Dep. 29:11-12, 36:3-6, 36:21-37:6)

14. Because no pushcart was available, Barker refused Plaintiff's request. (Pl.'s Dep. 37:11-38:4; Barker Decl. ¶¶ 8-10.)

15. After refusing Plaintiff's request for a pushcart, Plaintiff and another inmate (the

---

[1] Defendant notes that for the purposes of this motion, Plaintiff's version of events is undisputed. However, if the Court denies this motion and allows this case to proceed to trial, Defendant will present evidence that he was not at all involved in Plaintiff's July 25, 2005, move. (*See* Barker Decl. ¶¶ 3-7.)

same inmate that helped Plaintiff during the July 25, 2005 move) divided Plaintiff's property in half and dragged it from Plaintiff's reception center cell back to the reception center. (Pl.'s Dep. 29:22-30:2.)

16. While he could have prevented the other inmate from assisting Plaintiff again, Barker chose not to, believing that the assistance of another inmate would allow Plaintiff to move his property without injuring himself. (Barker Decl. ¶¶ 14-15.)

17. Following his moves on July 25 and 26, 2005, Plaintiff's preexisting left shoulder and lower back injuries were aggravated. (Compl. 3-4; Pl.'s Dep. 26:2-28:12, 40:24-41:10, 41:25-42:20.)

## ANALYSIS

In order to meet his burden on summary judgment, Barker must come forward with evidence that establishes the lack of existence of a triable issue of fact. Here, Plaintiff alleges that Barker was deliberately indifferent to a serious medical need of Plaintiff's, resulting in injury to Plaintiff.

A prisoner's allegation of deliberate indifference does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer v. Brennan, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Id.

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the

facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Barker argues that Plaintiff cannot show that Barker was deliberately indifferent to his serious medical needs. Barker notes that the undisputed facts indicate that although Barker did deny Plaintiff's request for a pushcart, he did allow another inmate, on both dates, to help Plaintiff carry his property. (Barker Decl. ¶¶ 14-15.) By allowing another inmate to assist Plaintiff in moving his property, Barker argues, he took action to prevent harm to Plaintiff. Though it is undisputed that Barker denied the request for a pushcart, he did so on the ground that no pushcart was available. (Barker Decl. ¶ 10.) There is no evidence that Barker attempted to interfere with the inmate assisting Plaintiff.

The only conduct specifically charged to Barker is that he twice told Plaintiff that he could not use a pushcart. There was no other interaction between Plaintiff and Barker. (Pl.'s Dep. 45:17.) Defendant correctly argues that The statute under which this action proceeds plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which the complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Defendant must be responsible for "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."

1   The court finds that Defendant has met his initial burden of informing the court of the
2   basis for his motion, and identifying those portions of the record which he believes demonstrate
3   the absence of a genuine issue of material fact.  The evidence submitted by Plaintiff establishes
4   that the only conduct engaged in by Defendants is his denial of a request for a pushcart.  There is
5   no evidence that a pushcart was available.  The evidence also establishes that Defendant chose
6   not to intervene to prohibit another inmate from assisting Plaintiff.  That Plaintiff was injured
7   does not, of itself, subject Barker to liability.
8       The burden therefore shifts to plaintiff to establish that a genuine issue as to any material
9   fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
10  586 (1986).  As stated above, in attempting to establish the existence of this factual dispute,
11  Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to
12  tender evidence of specific facts in the form of affidavits, and/or admissible discovery material,
13  in support of his contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at
14  586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).
15      Plaintiff supports his opposition with his declaration.  In his declaration, not made under
16  the penalty of perjury, plaintiff "opposes" certain of Defendant's statements of undisputed facts.
17  Plaintiff contends that Barker was "overseeing the handling and issuance of property of new
18  inmate arrivals."  Plaintiff disputes that a pushcart was available, and asserts that Defendant was
19  more involved in Plaintiff's move.  Plaintiff, however, offers no evidence.  Plaintiff attaches as
20  Exhibit A to his opposition a copy of the Second Level Appeal Response to Plaintiff's staff
21  complaint.  This document, however, fails to establish evidence of a triable issue of fact.  The
22  response indicates that Barker attempted to help Plaintiff.  Specifically, the response indicates
23  that "Sgt. Barker stated that he made every attempt to accommodate Appellant, including
24  offering to post transfer the property.  Appellant refused and insisted that the property go with
25  him on the bus. Sgt. Barker stated that at no time did Appellant show signs of discomfort or
26

pain."

Though Plaintiff offers no evidence, he argues that he can show that Barker was deliberately indifferent to his serious medical needs.  Plaintiff argues that he would not have been injured had Barker "reasonably looked for a pushcart and found one to assist Malone in so doing." Assuming that Plaintiff has evidence that Barker acted unreasonably, such a claim sounds in negligence, not deliberate indifference.  Negligence is insufficient to state a claim for relief under the Eighth Amendment.  Farmer, 511 U.S. at 835.

The Court finds that Plaintiff has not met his burden of coming forward with evidence that establishes a triable issue of fact - evidence that Barker was deliberately indifferent to Plaintiff's serious medical need.

Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion for summary judgment be granted, and judgment be entered in favor of Defendant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   February 18, 2009**               **/s/  William M. Wunderlich**
                                         UNITED STATES MAGISTRATE JUDGE